# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSES LEE FEAGIN, | ) | Case No. 1:22-cv-1201 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| MANSFIELD POLICE | ) | |
| DEPARTEMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Ulysses Feagin was driving in Mansfield, Ohio, when his vehicle nearly ran a marked police cruiser off the road. After a brief pursuit, he pulled into a parking lot, where police arrested him. During the encounter, Officer Jordan Moore of the Mansfield Police Department used a TASER, first in distance mode and then in drive-stun mode. The same officer later pepper sprayed Mr. Feagin. The police maintain that Mr. Feagin resisted arrest, justifying this use of force. Mr. Feagin claims that he did not. He also argues that the Officers' responses to his alleged resistance amounted to excessive force.

Mr. Feagin brought suit without a lawyer to vindicate his federal constitutional rights, specifically claiming that the Mansfield Police Department, Officers Moore, Boggs, and Blair, as well as John and Jane Doe each violated his Fourth, Eighth, or Fourteenth Amendment rights. The City of Mansfield and the Officers seek summary judgment in their favor, which Plaintiff opposes.

For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment.

## STATEMENT OF FACTS

On Defendants' motion for summary judgment, the Court construes the facts in Mr. Feagin's favor as the non-moving party. Video footage captures nearly all key events at issue in this case, leaving little room to dispute what they show. *See Scott v. Harris*, 550 U.S. 372 (2007). At this stage of the proceedings, the record establishes the following facts.

### A.    Stop and Arrest

On July 6, 2020, Plaintiff Ulysses Lee Feagin was driving down a residential street in Mansfield, Ohio. (*See* Moore's Dashcam at 0:23–0:30.) The road does not have marked lanes, and cars were parked on both sides of the two-lane road. (*Id.*) Officer Mark Boggs was traveling in the opposite direction in a marked police cruiser. (*Id.*) Officer Jordan Moore, operating another marked police cruiser, followed immediately behind Officer Boggs. (*Id.*) As Mr. Feagin's and Officer Boggs' vehicles approached each other from opposite directions, Mr. Feagin drove in the center of the road, nearly hitting the police cruiser head-on. (*Id.* at 0:17–0:30; Boggs' Dashcam at 2:17–2:30.) Officer Boggs pulled his cruiser over to the side of the road, nearly into a ditch, and honked his horn multiple times to avoid a collision, after which both he and Officer Moore immediately turned their cruisers around to follow Mr. Feagin's vehicle. (Moore's Dashcam at 0:23–0:39; Boggs' Dashcam at 2:17–2:30.)

After a brief pursuit, and less than one minute after the two cars almost collided, Mr. Feagin turned his vehicle into the parking lot of an apartment complex.

(*Id.* at 0:25–1:00.)  As he did so, Officer Moore activated his lights and sirens.  (*Id.*; Boggs' Dashcam at 2:58–3:04.)  Officer Moore parked his cruiser behind Mr. Feagin's vehicle and immediately proceeded to Mr. Feagin's driver's side window, instructing him multiple times to exit his vehicle.  (Boggs' dashcam at 3:17–3:37; Moore's Dashcam at 1:12–1:30.)  Officer Moore saw the vehicle roll slightly backward after Mr. Feagin pulled into a parking space as he shifted into park and the engine settled into gear.  (Moore's Dashcam at 1:25–1:30; Boggs' Dashcam at 3:26–3:30.)

At this point, Officer Moore attempted to break Mr. Feagin's window with a window breaker, during which time Officer Boggs also approached.  (Moore's dashcam at 1:30–1:35; Boggs' Dashcam at 3:31–3:36.)  After hitting the window twice with the breaker, Mr. Feagin opened the door.  (Moore's Dashcam at 1:30–1:45; Boggs' Dashcam at 3:31–3:46.)

### B.    TASER Incidents

At this point, the video shows Mr. Feagin hunched over facing forward as his door opens and he is removed from the vehicle, suggesting he was leaning down or reaching over.  (Moore's Dashcam at 1:30–1:45; Boggs' Dashcam at 3:31–3:46.)  As Officer Moore pulls Mr. Feagin from the vehicle, the videos show Mr. Feagin reaching in the direction of the open driver's door, but not lunging or in control of his movements at this point.  (*See also* ECF No. 46-1, ¶ 14, PageID #296.)  At first, he strains against the two officers as they take control of him.  Then, he appears to go limp as the officers wrestle him from the driver's seat of the car to a standing position beside it.  (*See* Moore's Dashcam at 1:35–2:06; Boggs' Dashcam at 3:36–3:45.)  As

3

Mr. Feagin stands facing the car between the two officers, each officer has control of one of his arms.  (*Id.*)

On the videos, the officers have Mr. Feagin's arms under control pinned behind him within a second or two as he stands facing the car.  (*See* Moore's Dashcam at 1:35–2:06; Boggs' Dashcam at 3:36–3:45.)  They clearly struggle to place Mr. Feagin in handcuffs, but Mr. Feagin appears to cooperate and not resist.  (Moore's Dashcam at 1:45–2:07.)  During this brief second or two, Officer Moore deploys his taser at close range twice.  (Moore's Dashcam at 1:40–1:58; Boggs' Dashcam at 3:43–3:46.)  After that, the officers cuffed Mr. Feagin and led him away from his car.  (*Id.*)

Officer Boggs characterizes these events as Mr. Feagin's "continued and determined resistance."  (ECF No. 46-1, ¶ 10, PageID #295.)  Officer Boggs swears that ammunition fell out of Mr. Feagin's pocket as the officers extracted him from his vehicle.  (*Id.*, ¶ 11.)  However, the video footage does not show ammunition falling from Mr. Feagin's pocket, though it might be too small to see.  (Moore's Dashcam at 1:30–1:50; Boggs' Dashcam at 3:31–3:51.)  Later, officers found two handguns, one loaded, in the passenger area of his car.  (ECF No. 46-1, ¶12, PageID #295.)

### C.  Pepper Spray Incident

After handcuffing Mr. Feagin, Officer Moore secured him in the rear of his cruiser.  (Moore's Rearcam at 2:37-3:18.)  Although Mr. Feagin walked to the cruiser, he did not cooperate in getting into the backseat.  (*See* Moore's Rearcam at 2:37-3:18; Boggs' Dashcam at 3:55–5:16.)  Once seated, he refused multiple times to pull his legs into the cruiser, causing Officer Moore to try to push them in on several occasions before being able to close the door.  During this process, Officer Moore attempted to

4

pepper spray Mr. Feagin, but the pepper spray did not deploy.  (Boggs' Dashcam at 5:05–5:16.)

Once Officer Moore was able to confine Mr. Feagin in the back of his cruiser, the video footage shows Mr. Feagin kicking the window.  (Moore Rearcam at 3:27–7:11.)  Looking in the direction of Officers Blair and Boggs, Officer Moore said, "hey, give me your pepper spray."  (Moore's Dashcam at 5:09–5:10; Boggs' Dashcam at 7:10–7:15.)  Officer Moore warned Mr. Feagin that, if he kicked at the windows and damaged the police car, then he would be exposed to pepper spray.  (Moore's Rearcam at 6:55–7:02; Boggs Dashcam at 8:54–9:01.)  Mr. Feagin continued to kick the window.  Then, Officer Moore rolled down the cruiser's window, reached into the cruiser, and pepper sprayed Mr. Feagin, before rolling the window back up and walking away.  (Moore's Rearcam at 7:11–7:25; Boggs' Dashcam at 9:07–9:18.)  In his affidavit, Officer Boggs recites that Officer Moore used pepper spray to prevent "damage to the cruiser or himself [Mr. Feagin]."  (ECF No. 46-1, ¶ 15, PageID #296.)

After being pepper sprayed, Mr. Feagin continued to kick the window but was not sprayed again.  (Moore's Rearcam 9:40–11:11; Moore's Dashcam at 9:40–11:11.)  Instead, officers transferred him to another cruiser.  (Moore's Rearcam at 11:11–12:09; Boggs' Dashcam at 13:15–13:44; Oblak's Rearcam at 3:32–4:08; Oblak's Dashcam at 3:34–4:10.)  In the second cruiser, Officer Oblak's, Officer Moore assisted Officer Boggs in placing Mr. Feagin into the cruiser by reaching in from the opposite side door to pull Mr. Feagin by the neck of his shirt, dragging him backward fully into the cruiser.  (Oblak's Rearcam at 3:56–4:08.)

Officers also arrested a female passenger in the front passenger seat of Mr. Feagin's vehicle.  (ECF No. 46-1, ¶ 16, PageID #296.)  Like Mr. Feagin, she was kicking the windows of a police cruiser, warned to stop, and pepper sprayed.  (*Id.*)

### D.    Medical Treatment

Once secured in the second cruiser, Officer Oblak drove Mr. Feagin to the police station (*see* Oblak's Rearcam at 3:50–18:08; Oblak's Dashcam at 14:34–17:57), where Defendants claim he was "decontaminated and processed."  (ECF No. 46-1, ¶ 27, PageID #290.)  Mr. Feagin disputes this account, instead claiming that he was "denied medical treatment in regards to the OC spray by intentionally refusing to clean the face and skin where the mace was burning [his] face, eyes, and skin."  (ECF No. 1, ¶ 2, PageID #2; *see also* ECF No. 61-2, ¶¶ 27–29, PageID #451.)  In his affidavit, Mr. Feagin states that he was left in this condition without treatment for two days.  (ECF No. 61-2, ¶¶ 54–55.)  Also, he swears that that the officers "removed Taser probes without assistance of medical professionals" in an aggressive way, but does identify any particular officer who did so.  (ECF No. 1, ¶ 2, PageID #2; *see also* ECF No. 61-2, ¶ 28, PageID #451.)

## STATEMENT OF THE CASE

On July 6, 2022, Mr. Feagin filed suit *pro se* against Defendants seeking compensatory and punitive damages.  (ECF No. 1.)  Based on the events during his traffic stop and arrest on July 6, 2020, Mr. Feagin alleges violations of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, in addition to various State-law tort claims.  Because he seeks monetary damages, the

6

Court reads the complaint to state these claims against the officers in their individual capacities.

Under Section 1983, Mr. Feagin claims (1) use of excessive force in violation of the Fourth and Fourteenth Amendments; (2) denial of adequate medical care in violation of the Eighth Amendment; and (3) failure to intervene during the use of excessive force in violation of the Fourth and Eighth Amendments.  (*Id.*, PageID #1–5.)  He also brings a claim for intentional infliction of emotional distress.  (*Id.*)

Defendants seek summary judgment on three grounds:  (1) the officers' actions were reasonable and did not constitute excessive force; (2) qualified immunity; and (3) statutory sovereign immunity.   (ECF No. 46, PageID #265–83.)

## EVIDENTIARY ISSUES

Before turning to the merits of Defendants' arguments for summary judgment, the Court addresses Mr. Feagin's "Motion to Strike Defendant's Exhibit 4," his filing of a document called "Judicial Notice of Improper Affidavit," and his motion for return of evidence at the end of the case.  (ECF No. 63; ECF No. 64; ECF No. 65.)

### A.      Defendants' Exhibit 4

On March 4, 2024, Plaintiff moved to strike Defendants' Exhibit 4—the "unedited recording of the mic activated at the time of the encounter."  (ECF No. 63, PageID #520.)  Mr. Feagin argues that Defendants failed to disclose this exhibit during discovery.  Defendants failed to respond to this motion.  The Court takes that failure as an admission that they did not produce the contents of Exhibit 4 in discovery and that they had an obligation to do so either under Rule 26(a) or (e).  Indeed, the fact that Defendants proffer this recording to support their motion for

summary judgment demonstrates that this recording should have been produced pursuant to Rule 26(a)(1).  But nothing in the record suggests that it was produced in discovery.

Where a party fails to provide information as required under Rule 26(a) or (e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).  Defendants make no argument that the exception to this self-executing exclusionary rule applies.  Therefore, the Court **GRANTS** Mr. Feagin's motion.  In connection with ruling on Defendants' motion for summary judgment, the Court has not listened to Exhibit 4 and gives it no consideration.

### B.    Officer Moore's "Affidavit"

In support of summary judgment, Defendants submitted and rely heavily on a document titled "Affidavit of Jordan Moore."  (ECF N. 46-1, PageID #287.)  On April 1, 2024, Mr. Feagin requested that the Court take judicial notice of the impropriety of Officer Moore's affidavit.  (ECF No. 65.)  Mr. Feagin contends that Officer Moore's affidavit is not valid because it is "not properly notarized."  (ECF No. 65, PageID #528.)  Specifically, he contends that the affidavit lacks "the proper notary Jurat, and was not dated."  (*Id.*)  Indeed, unlike the affidavit of Officer Boggs (ECF No. 46-1m PageID #298), Officer Moore's statement lacks these formalities (ECF No. 46-1, PageID #291)—a sign of sloppy lawyering.

Under Ohio law, errors in notarizing a document are not necessarily fatal.  *See, e.g.*, *Anderson v. Mitchell*, No. 99876, 2014-Ohio-1058, ¶ 8 (Ohio Ct. App.).  For example, a notary's failure to sign his name on the document does not invalidate the

affidavit.  *Stern v. Board of Elections of Cuyahoga Cnty.*, 14 Ohio St. 2d 175, 178–83, 237 N.E. 313 (1968).  Nor does failing strictly to comply with the statutory requirements.  *Anderson*, 2014-Ohio-1058, ¶ 8 (citing *City Comm'n of Gallipolis v. State*, 36 Ohio App. 258, 261, 173 N.E. 36 (Ohio Ct. App. 1930)).  But Ohio law does require substantial compliance for an affidavit to be valid.  *Id.* at ¶ 8.  However, where a notary's name is not printed or stamped and the signature is illegible, an affidavit is invalid.  *Id.* at ¶ 10.  Such is the case here.  Officer Moore's affidavit does not contain the notary's stamp, and the notary's signature is illegible.  The Court finds that it fails substantially to comply with the requirements of Ohio law.

In place of an affidavit, federal law permits a person to provide an unsworn declaration so long as he does so under penalty of perjury in substantially the language the statute requires.  28 U.S.C. § 1746.  On this score too, Officer Moore's statement fails.  It is not signed under penalty of perjury.  It is not dated.  In some cases, technical non-compliance with the statute might not make a declaration improper.  *See, e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002).

In such cases, however, the statements at issue suffer from only a single technical defect—for example, it is not dated, not notarized but sworn under penalty of perjury, or was an otherwise good-faith attempt to swear out an affidavit that somehow failed to meet all the technical requirements but nonetheless substantially complied with the requirements of the statute.  Through no fault of his own, Officer Moore's statement does not fall into that category.  His statement includes no pretense of binding Officer Moore to testimony under penalty of perjury.  It merely

9

"aver[s]" to the truth and accuracy of the contents of his statements.  (ECF No. 46-1, PageID #287.)  But averring, meaning alleging, presents a matter for the pleading stage and does not constitute proper evidence on summary judgment.  Averments fall far short of being a statement under penalty of perjury.  And the statement at issue does not even purport to be one.  *See Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (holding that the district court properly disregarded an affidavit in ruling on summary judgment because it failed to comply with Section 1746); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001) (concluding that the trial court properly disregarded the unsworn statement because it was not given under the penalty of perjury).

Again, Defendants offer no response to Plaintiff's motion directed at Officer Moore's "affidavit."  Because it is not a valid affidavit, the Court cannot consider Officer Moore's statement as evidence in support of Defendants' motion for summary judgment.

### C.    Return of Discovery

On March 18, 2024, Mr. Feagin requested that the discovery he submitted be returned to him, specifically the video evidence (Exhibit G).  (ECF No. 64.)  The Court **DENIES** this motion as premature.  At the conclusion of the case, after the entry of a final non-appealable order, Mr. Feagin may renew this motion.  Until then, Exhibit G remains a part of the record and will be maintained as such.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

10

matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 250).  To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record.  *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).  Instead, the parties must bring those facts to the Court's attention.  *Id.*

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Court, instead, determines "whether the evidence presents a sufficient disagreement to require submission to a jury" or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  In doing so, the Court must view the evidence in the light most favorable to the non-moving party, in this case Mr. Feagin.  *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita*, 475 U.S. at 587).

11

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp 3d at 576 (citing *Anderson*, 477 U.S. at 250). If the evidence, however, "is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247–48).

"Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

To the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed "in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

## I.    Section 1983

Section 1983 provides a federal cause of action to a person whose rights "secured by the Constitution" are violated by an official acting "under color of [State

law].” 42 U.S.C. § 1983. In this way, Section “1983 creates a species of tort liability” where State actors violate federal constitutional rights. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (citation omitted). “The first inquiry in any § 1983 suit is to isolate the precise constitutional violation” alleged. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotation marks and citation omitted). “After pinpointing” the constitutional right at issue, “courts still must determine the elements of, and rules associated with, an action seeking damages for its violation.” *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (citation omitted). Under Section 1983, “the general ‘common law of torts’” bridges the gap between a constitutional right and the elements of a cause of action. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) (citation omitted).

Mr. Feagin alleges that his arrest violated the Fourth, Eighth, and Fourteenth Amendments. (ECF No. 1, ¶¶ 1–17, PageID #1–5.) Under the Fourth and Fourteenth Amendments, he contends that the force used during his arrest was unreasonable and excessive. (*Id.*, ¶ 2, PageID #2.) Under the Eighth Amendment, Mr. Feagin claims he was denied adequate medical care. (*Id.*, ¶ 1, PageID #1.)

Officers Moore, Boggs, and Blair and the City of Mansfield move for summary judgment on Mr. Feagin’s claims of excessive force and failure to intervene. (ECF No. 46, PageID #259.) They assert that the use of force was “objectively reasonable” (ECF No. 46, PageID #266), that they are entitled to qualified immunity on these claims (ECF No. 46, PageID #265), and that Defendants enjoy statutory sovereign immunity (ECF No. 46, PageID #278–83). Although Defendants seek summary

13

judgment "as to all of Plaintiff's claims" (ECF No. 46, PageID #259), Defendants' motion did not address the merits of Mr. Feagin's claim of inadequate medical care. Though Mr. Feagin brings that claim under the Eighth Amendment, because he was a pretrial detainee and not an inmate, the law treats it as a Fourteenth Amendment claim.  *See, e.g.*, *Trozzi v. Lake Cnty.*, 29 F.4th 745, 752–55 (2022).  Because Defendants fail to develop any argument entitling them to judgment as a matter of law on this claim, the Court will not consider it further in this ruling and will schedule it for trial.

### I.A.    Excessive Force

"The police must act reasonably when seizing a person." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (citing U.S. Const. amends. IV & XIV).  Using excessive force is unreasonable.  *Id.*  "Courts reviewing § 1983 claims alleging excessive force must first consider whether the officer violated the constitution by using excessive force, then decide whether the officer deserves qualified immunity because he did not violate 'clearly established' federal law." *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008).  "Whether an officer's use of force in effecting an arrest violates the Fourth Amendment turns on 'whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him],' without regard to [his] underlying intent or motivation.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (quoting *Graham*, 490 U.S. at 397 (1989)).

Careful attention must be paid to "the facts and circumstances of . . . [the] case . . . ." *Graham*, 490 U.S. at 396 (citation omitted).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).  Police officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Ultimately, "[o]fficers may use non-lethal force—such as tasers or pepper spray—if they have an 'objective justification' for doing so." *Palma v. Johns*, 27 F.4th 419, 430 (6th Cir. 2022) (quoting *Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004).)  When "assessing objective reasonableness in the typical situation of a law-enforcement officer accused in a civil suit of using excessive force," courts use the three-factor *Graham* test.  *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).  This test examines:  (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (1989) (citation omitted).

### I.A.1. Taser Use

Taser devices "can be used to either shoot 2 probes out at the target . . . or in 'stun gun' mode where the taser is directly placed on the body of the target." *Landis v. Baker*, 297 F. App'x 453, 456 n.4 (6th Cir. 2008).  The videos of Mr. Feagin's arrest show that Officer Moore used his taser twice at a short distance, but fail to provide other technical information or details about its use.

Under the Fourth Amendment, the "reasonableness of an officer's use of a taser turns on active resistance." *Kent*, 810 F.3d at 392.  "When a suspect actively resists arrest, the police can use a taser . . . to subdue him; but when a suspect does not

resist, or has stopped resisting, they cannot." *Rudlaff*, 791 F.3d at 642. "It is clearly established in this Circuit that 'the use of a Taser on a non-resistant suspect' constitutes excessive force." *Kent*, 810 F.3d at 396 (quoting *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010)). "Absent some compelling justification—such as the potential escape of a dangerous criminal or the threat of immediate harm—the use of such a weapon on a non-resistant person is unreasonable." *Kijowski*, 372 F. App'x at 600 (citation omitted).

No evidence in the record suggests a concern for potential escape or immediate harm. After Mr. Feagin parked at the apartment complex, officers blocked his car, he made no effort to flee, and the videos show no threat of immediate harm to the officers, Mr. Feagin, or any other person during his arrest. Nor does the affidavit of Officer Boggs point to these rationales to justify the use of tasers. Therefore, under the law of this Circuit, the analysis focuses on resistance to arrest. "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012). Where Sixth Circuit has "found excessive force, the suspects were compliant or had stopped resisting." *Id.*

One undisputed fact that does not bear on the analysis, in the Court's view, is the failure of the officers to give Mr. Feagin a warning that he would be tased. "In determining whether officers used excessive force, courts have placed great weight on officers' failure to warn a suspect before deploying a taser." *Gradisher v. City of Akron*, 794 F.3d 574, 585 (6th Cir. 2015). On the facts of this case, removing

16

Mr. Feagin from his car and cuffing him happened in a matter of seconds, not enough time to provide a warning, and in circumstances that make a warning impractical.

Based on the video evidence of Mr. Feagin's removal from his vehicle and arrest, the events fall in the gray area between active and passive resistance. Certainly, Mr. Feagin did not comply with the officers. Construing the video and record in favor of Mr. Feagin on summary judgment, as the Court must, Officer Moore, with the help of Officer Boggs, hauled Mr. Feagin out of his car as he reached back toward the inside of his vehicle. After extricating him from his vehicle, they secured both of Mr. Feagin's arms behind his back almost immediately. (Moore's Dashcam at 1:34–1:44; Boggs' Dashcam at 3:37–4:00.) Officer Boggs helped hold Mr. Feagin's left arm in place while Officer Moore held his right arm.

Whether these facts show active resistance—justifying the use of force as the officers claim—or run-of-the mill noncompliance—making the use of force unnecessary and constitutionally excessive—turns on how a finder of fact assesses these events following a significant traffic violation. Based on the video evidence and the record, a jury would be justified in finding that Mr. Feagin was largely under control "or had stopped resisting" by the time Officer Moore used his taser. *See Hagans*, 695 F.3d at 509. By the same token, a jury could review the facts and the testimony of the officers and find that Mr. Feagin offered sufficient resistance to the police to necessitate the use of force. Summary judgment does not permit the Court to wade into this factual dispute, which is the province of the jury. Put another way,

17

the Court cannot say as a matter of law that Officer Moore acted objectively reasonable in using his taser on Mr. Feagin.

### I.A.2. Pepper Spray

"[T]here is a very limited class of circumstances when the use of pepper spray is proper, including where a detainee is unsecured, acting violently, and posing a threat to himself or others." *Cabaniss v. City of Riverside*, 231 F. App'x 407, 413 (6th Cir. 2007). Where a suspect "surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else," the use of pepper spray constitutes excessive force. *Champion v. Outlok Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002)).

Prior decisions of the Sixth Circuit illustrate application of the principles on specific facts. For example, the use of pepper spray was reasonable where officers feared than an arrestee, armed with a knife, was going to flee. *Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004). Using pepper spray on a handcuffed detainee in the backseat of a police car whose ankles were also bound with a hobble device violated the suspect's constitutional rights. *Champion*, 380 F.3d at 901, 903–04. But the use of pepper spray did not amount to excessive force where the plaintiff was unsecured in the backseat of a cruiser, suicidal, and "beating his head against" the plexiglass. *Cabiness*, 231 F. App'x at 413.

Here, the record shows Mr. Feagin repeatedly and forcefully kicking the window of the back of the police cruiser while handcuffed. (*See* Moore's Dashcam at 4:45–7:20.) As Mr. Feagin kicked the windows, Officer Moore asked Officer Blair and Officer Boggs for pepper spray. (Moore's Dashcam at 5:09–5:10.) Officer Moore

grabbed it out of Officer Blair's holster himself.  (Moore's Dashcam at 5:10–5:17; Boggs' Dashcam at 7:10–7:17.)  Then, Officer Moore directed Mr. Feagin to stop kicking the window, saying, "You got to stop hitting your head or you're getting pepper sprayed.  Kick my window, you're getting pepper sprayed." (Moore's Rearcam at 6:55-7:02: Moore's Dashcam at 6:55–7:02; Boggs' Dashcam at 8:54–9:01.)  Within seconds, and with Mr. Feagin again kicking the window, Officer Moore rolled down the window, deployed pepper spray on Mr. Feagin, then closed the window.  (Boggs' Dashcam at 9:07–9:18; Moore's Rearcam at 6:55–7:20.)

Officer Moore's direction to Mr. Feagin to stop hitting his head on the cruiser's window would appear to bring this case squarely within the narrow circumstances in which the use of pepper spray does not constitute excessive force—preventing harm to the suspect himself.  However, the record contains no evidence that Mr. Feagin was actually hitting his head against the window.  Nonetheless, as a matter of law, Officer Moore's use of pepper spray was reasonable and not excessive on the facts and circumstances presented.  Mr. Feagin disregarded multiple instructions to stop kicking the window—a violent act that threatened to interfere with the officers' efforts to arrest Mr. Feagin and safely transport him. Therefore, the Court **GRANTS** Defendants' motion for summary judgment on the excessive use of force claim to the extent it involves the use of pepper spray.

### I.B.    Failure to Intervene

Mr. Feagin also brings failure to intervene claims against Officers Boggs and Blair.  To find that an officer liable for excessive force, Mr. Feagin must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the

officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citing *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996)). "[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (citing *Anderson v. Branon*, 17 F.3d 552, 557 (2d Cir. 1994)).

When Officer Moore tased Mr. Feagin, Officer Boggs was holding Mr. Feagin's left arm in an effort to restrain him. Even if a jury finds Officer Moore's use of the taser excessive, the undisputed record depicted on the video confirms that Officer Boggs did not have the opportunity or means to prevent Officer Moore from using his taser. Nothing in the record suggests that Officer Boggs had reason to know that Officer Moore would use his taser. Even if he did, Officer Boggs lacked the means to prevent him from doing so without releasing Mr. Feagin's arm and making his arrest more dangerous for all involved. As for Officer Blair, the videos confirm that he was not close enough to intervene to stop the use of the taser, even if its use was excessive. Therefore, he too did not have the opportunity to prevent the excessive use of force. For these reasons, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's failure-to-intervene claim.

### I.C.    Qualified Immunity

Officer Moore asserts that he enjoys qualified immunity against Mr. Feagin's excessive force claim. Qualified immunity protects public officials against lawsuits for civil damages where their conduct does not violate clearly established

constitutional rights. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quotation omitted). In evaluating a claim of qualified immunity, the Sixth Circuit directs a district court to undertake two inquiries, in either order. The Court must determine whether "the facts alleged make out a violation of a constitutional right." *Id.* Also, the Court asks if the right at issue was clearly established at the time "such that a reasonable officer would have known that his conduct violated it." *Id.* (citation omitted). The burden to show that qualified immunity does not exist rests on the plaintiff. *Chappell*, 585 F.3d at 907 (citation omitted). To meet this burden, he must satisfy both steps of the test. *Martin*, 712 F.3d at 957 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### I.C.1. Clearly Established Right

The Court proceeds in reverse order and addresses first whether Mr. Feagin's right to be free from excessive force through Officer Moore's use of a taser was clearly established as of July 2022. It is clearly established that "police must act reasonably when seizing a person." *See Rudlaff*, 791 F.3d at 641 (citing U.S. Const. amends. IV & XIV). More specifically, when it comes to the use of a taser, for at least a decade the Sixth Circuit has held that a person has "a clearly established constitutional right not to be tasered when he was at most offering passive resistance to an officer." *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015).

Qualified immunity turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Griffith v. Coburn*, 473 F.3d 650, 660 (6th Cir. 2007). On that score, the law of this Circuit leaves no doubt. If a jury finds that Mr. Feagin offered, at most, passive resistance to the

officers, then he had a clearly established constitutional right that Officer Moore violated.  Further, as reflected in the language of Officer Boggs' affidavit (*see* ECF No. 46-1, ¶ 10, PageID #295), the record demonstrates that the officers on the scene knew as much.

Defendants focus, in part, on "Mr. Feagin [having] no clearly established constitutional right to threaten the police, to assault the police, to expose the police to danger," or "to attempt to destroy a police cruiser by kicking out the back window or otherwise attempting to harm himself in order to disrupt the lawful search of his vehicle during the course of a lawful traffic stop."  (ECF No. 46, PageID #277.)  But this strawman seeks to divert attention from the proper legal question.  Instead, the constitutional inquiry focuses on whether Mr. Feagin had a clearly established right to be free from the use of excessive force.  That right was clearly established long before the events at issue.

### I.C.2. Constitutional Violation

As discussed above, when "assessing objective reasonableness in the typical situation of a law-enforcement officer accused in a civil suit of using excessive force," courts use the three-factor *Graham* test.  *Estate of Hill*, 853 F.3d at 312.  These factors are: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  In support of its motion, Defendants argue that the *Graham* factors "all weigh in favor of summary judgment for Defendants."  (ECF No. 46, PageID #272.)  Further, they maintain that their actions were a direct result of and in proportion to

Mr. Feagin's criminal conduct and that the "reasonableness of [their] conduct … cannot be placed beyond debate from the standpoint of the application of qualified immunity." (ECF No. 46, PageID #276.)

On summary judgment, deciding qualified immunity is not proper where, as here, a genuine disputes of material fact exist. *See Gillispie v. Miami Twp.*, 18 F.4th 909, 915–19 (6th Cir. 2021). That is, because finding a violation of Mr. Feagin's clearly established Fourth Amendment right to be free from excessive force turns on disputed material facts, qualified immunity is not proper at this stage. *See id.* The disputed facts call into question the availability of qualified immunity under the *Graham* factors. Application of those factors involves disputed facts that a jury must first decide. Therefore, Defendants' qualified arguments are premature. *See id.*

*   *   *

Defendants' motion argues that "[w]hen the question is unclear as to whether an officer's use of force was reasonable or excessive, the proper course is to grant summary judgment to the officers, even if the court would hold the officers' conduct unconstitutional in hindsight." (ECF No. 46, PageID #266 (citations omitted).) However, Defendants misrepresent the case they quote, *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015). What the Sixth Circuit held was that district courts should grant summary judgment where facts are *not* in dispute and where government action was within "the hazy border between excessive and acceptable force.'" *Id.* at 644 (quotation omitted). This is not a case like *Rudlaff*, in which undisputed facts created a situation where it was unclear whether the force "fit cleanly within" case law. *Id*; *see also id.* at 642 (finding "no genuine dispute of fact" regarding active resistance of

23

arrest).  In this case, the dispute is not whether the facts fit cleanly within case law, but instead whether the disputed facts show excessive or acceptable uses of force.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment regarding Officer Moore's use of force regarding the taser incidents and **GRANTS** the balance of Defendants' motion.

## II.    State-Law Claim

Mr. Feagin's complaint appears to assert all but one claim under Section 1983. (*See* ECF No. 1, ¶¶ 14–17, PageID #4–5.)  He asserts one claim against Officer Moore under State law for intentional infliction of emotional distress relating to his use of pepper spray when Mr. Feagin was in the back of the cruiser.  (*Id.*)  Also, he names the Mansfield Police Department as a Defendant in this case.  The Court easily dispenses with these loose ends.

*First*, to prove a claim for intentional infliction of emotional distress, Ohio requires a plaintiff to show "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."  *See Phung v. Waste Mgt. Inc.*, 71 Ohio St. 3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286, 289 (citation omitted).  Ohio employs a reasonable person standard.  That is, the emotional distress suffered by the plaintiff must be of such a nature that "no reasonable [person] could be expected to endure it."  *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).  The undisputed video evidence precludes a finding by a reasonable finder of fact that Officer Moore intended to cause

serious emotional distress or that the officer's conduct was extreme and outrageous. To the contrary, the video footage shows that Officer Moore sought to ensure reasonable compliance from Mr. Feagin to transport him safely. In any event, Mr. Feagin presents no evidence to support a finding of serious emotional distress. For these reasons, Defendants are entitled to a summary judgment on this claim.

*Second*, to the extent Mr. Feagin asserts any claim against the Mansfield Police Department, any such claim suffers from a fatal defect. It is well established that there is no *respondeat superior* liability under Section 1983. That is, an employer cannot be held responsible for the acts of a police officer only where an official policy or custom causes the alleged constitutional violation. *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978)). In other words, the entity can only be liable "through its *deliberate* conduct," that made it "the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Put simply, each Defendant must have "intentionally" deprived the plaintiff of a federally protected right. *Id.* But Plaintiff points to no evidence in the record that the Mansfield Police Department itself caused the violations of his rights of which he complains.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment. After the Court's ruling, what remains for trial are two claims: (1) Plaintiff's claim of excessive force under the Fourth Amendment against Officer Moore based on his use of a taser on Mr. Feagin;

and (2) Plaintiff's claim under the Fourteenth Amendment that the three officers failed to attend to his legitimate medical needs after he was tased and pepper sprayed.  By separate order, the Court will set this case for trial.

      **SO ORDERED.**

Dated:  July 15, 2024

                                    _____
                                          J. Philip Calabrese
                                          United States District Judge
                                          Northern District of Ohio